**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **Authentixx LLC,** | Case No. 7:25-cv-287-DC-DTG |
| Plaintiff, | Patent Case |
| v. | Jury Trial Demanded |
| **Kirkus Media LLC,** | |
| Defendant. | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

1. Plaintiff Authentixx LLC ("Plaintiff"), through its attorneys, complains of Kirkus Media LLC ("Defendant"), and alleges the following:

## PARTIES

2. Plaintiff Authentixx LLC is a limited liability company organized and existing under the laws of Delaware that maintains its principal place of business at 261 West 35th St, Suite 1003 New York, NY 10001.

3. Defendant Kirkus Media LLC is a limited liability company organized and existing under the laws of DE that maintains an established place of business at 2600 Via Fortuna, Suite 130, Austin, TX 78746.

## JURISDICTION

4. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

5. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Defendant because it has engaged in systematic and continuous business activities in this District. As described below, Defendant has committed acts of patent infringement giving rise to this action within this District.

## VENUE

7. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant has an established place of business in this District. In addition, Defendant has committed acts of patent infringement in this District, and Plaintiff has suffered harm in this district.

## PATENT-IN-SUIT

8. Plaintiff is the assignee of all right, title and interest in United States Patent No. 10,355,863 (the "Patent-in-Suit"); including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Patent-in-Suit. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the Patent-in-Suit by Defendant.

## THE '863 PATENT

9. The '863 Patent is entitled "System and method for authenticating electronic content," and issued 2019-07-16. The application leading to the '863 Patent was filed on 2017-12-08. A true and correct copy of the '863 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10. Prior to the invention of the '863 Patent, conventional web page authentication systems suffered from significant technological deficiencies that left users vulnerable to fraudulent websites and identity theft. As the '863 Patent explains, web pages often included

"icons, such as, corporate logos, patterns, characters, symbols or other indicators" that users associated with legitimate entities, but "unfortunately, these bitmaps can be copied and used to defraud a prospective consumer." '863 Patent, Col. 1:25-30. The specification further describes how "it is relatively easy for a 'fraudster' to register a URL that is like the one the user is expecting, but is not quite the same," creating situations where "a user may retrieve an unwanted webpage that appears authentic." '863 Patent, Col. 1:33-39.

11. The prior art systems were technologically deficient because they lacked any secure mechanism to verify the authenticity of web content beyond basic visual elements that could be easily counterfeited. Traditional authentication approaches relied solely on visual indicators like logos and corporate branding that could be copied, or on URL verification that could be spoofed through similar domain names. As the patent describes, "consumers rely on the accuracy of a URL of a web page," but fraudsters could easily create deceptive URLs, leaving users "uncertain" about "the true owner of a web page." '863 Patent, Col. 1:32-40.

12. Conventional systems also failed to provide users with personalized, tamper-resistant authentication mechanisms that could reliably distinguish legitimate content from fraudulent copies. The prior art lacked any infrastructure to create user-configurable authenticity verification that could work independently of easily-copied visual elements or spoofable domain names.

13. To address these technological deficiencies, the '863 Patent claims unconventional and inventive methods for web page authentication that integrate server-based authenticity key generation with client-side preference file management to create a robust, personalized authentication system. Among its inventive concepts is storing user-defined

authenticity stamps in preference files with obscured locations, then using server-generated authenticity keys to locate and retrieve these stamps for display verification.

14. The method of Claim 9 represents a significant technological advancement by creating a distributed authentication architecture where authenticity verification relies on the coordination between server-generated keys and client-stored preferences rather than easily-counterfeited visual elements. As recited in Claim 9, the method includes "storing at least one authenticity stamp in a preferences file located in a file location" and "creating, by one or more designated servers, an authenticity key with information to locate the preferences file." This inventive approach separates the authentication mechanism from the web content itself, making it virtually impossible for fraudsters to replicate without access to both the server-side key generation system and the user's specific preference file configuration.

15. A further inventive concept involves the use of obscured file locations to enhance security. The specification explains that "the preferences file is placed in a random directory to help obscure the location of the preference file and facilitate the creation of unique user configurations." '863 Patent, Col. 11:65-67. This approach "increases the difficulty in creating a general purpose rogue program for extracting preferences and keys." '863 Patent, Col. 12:3-5.

16. Another significant inventive concept captured in Claim 9 is the creation of a distributed authentication architecture that separates authentication logic between client and server components while maintaining secure coordination between them. Unlike conventional authentication systems that rely on centralized verification or purely client-side checks, the method of Claim 9 creates a hybrid approach where "the one or more designated servers" generate authenticity keys containing location information, but the actual authentication preferences and stamps are stored locally on the client system. This distributed approach

improves both security and computer functionality by reducing server-side storage requirements and network traffic while simultaneously making the authentication system more resilient to server compromises. As the specification describes, this allows the system to provide "assurance as to the authenticity of the content" '863 Patent, Col. 3:64-65, without requiring constant server communication or vulnerable centralized storage of user preferences. The method enables scalable authentication across numerous users without creating a single point of failure, while the coordination mechanism between server-generated keys and client-stored preferences ensures that neither component alone can complete the authentication process, thereby significantly enhancing overall system security compared to conventional centralized or purely client-side authentication approaches.

17. The authentication system of the '863 Patent solves the technological problems of conventional web authentication by creating a personalized verification mechanism that cannot be replicated through simple copying of visual elements or domain spoofing. The method requires coordination between server-generated authenticity keys and client-stored preference files, creating a multi-factor authentication approach where "the user will expect to see his or her stamp and will begin to associate the stamp with security." '863 Patent, Col. 8:17-19.

18. The "storing at least one authenticity stamp in a preferences file located in a file location" limitation of Claim 9 captures the inventive concept of creating user-personalized authentication indicators that are stored separately from the web content being authenticated. This prevents fraudsters from simply copying authentication elements along with website content.

19. The "creating, by one or more designated servers, an authenticity key with information to locate the preferences file" limitation of Claim 9 captures the inventive server-

side component that generates location information needed to access the user's personalized authentication preferences. This server-generated key creates a secure link between the authentication request and the user's specific configuration.

20. The "providing the authenticity key for processing to determine the file location of the preferences file" of Claim 9 and subsequent processing limitations capture the inventive method of using the server-generated key to locate and retrieve user-specific authentication elements. This multi-step process ensures that authentication can only be completed through coordination between legitimate servers and the user's configured preferences.

21. The combination of these claim limitations creates a specific technological solution that transforms conventional web authentication from a system vulnerable to visual copying and domain spoofing into an intelligent, distributed authentication network that requires coordination between multiple technological components to verify authenticity.

22. The method of Claim 9 significantly improved computer and network functionality by creating a more secure and efficient web authentication system that reduced the computational overhead and security vulnerabilities associated with traditional authentication approaches. By storing authentication preferences locally and using server-generated keys for retrieval, the invention eliminated the need for complex certificate-based authentication systems while providing superior security through personalized, tamper-resistant verification mechanisms. The specification explains that this approach allows "a user to validate that current information (e.g., a web page) originates from the true owner of the icon and is not merely a copy." '863 Patent, Col. 3:38-41.

23. The inventive concept of using obscured file locations to enhance authentication security is specifically captured in Claim 11, which adds the limitation that "the file location is at

least one of a random directory and a location not readily known in order to obscure the location of the preferences file." This dependent claim builds upon the foundational method of Claim 9 by requiring that the preferences file be stored in a location that is intentionally difficult to discover, thereby preventing malicious actors from easily locating and compromising user authentication preferences. As the specification explains, this approach "increases the difficulty in creating a general purpose rogue program for extracting preferences and keys." '863 Patent**,** Col. 12:3-5. By obscuring the file location, the system creates an additional layer of security that makes it computationally infeasible for attackers to systematically locate and exploit user preference files across multiple systems.

24. None of the methods of the '863 Patent were previously performed by human beings or capable of being performed in the human mind, as they necessarily involve complex server-client coordination, cryptographic key generation, automated file location processing, and dynamic preference file management across distributed computer networks.

**COUNT 1: INFRINGEMENT OF THE '863 PATENT**

25. Plaintiff incorporates the above paragraphs herein by reference.

26. **Direct Infringement**. Defendant directly infringed one or more claims of the '863 Patent in at least this District by making, using, offering to sell, selling and/or importing, without limitation, at least the Defendant products identified in the charts incorporated into this Count below (among the "Exemplary Defendant Products") that infringed at least the exemplary method claims of the '863 Patent also identified in the charts incorporated into this Count below (the "Exemplary '863 Patent Claims") literally or by the doctrine of equivalents. On information and belief, numerous other devices that infringed the claims of the '863 Patent have been made, used, sold, imported, and offered for sale by Defendant and/or its customers.

27. Defendant also directly infringed, literally or under the doctrine of equivalents, the Exemplary ’863 Patent Claims, by having its employees internally test and use these Exemplary Products.

28. Exhibit 2 includes charts comparing the Exemplary ’863 Patent Claims to the Exemplary Defendant Products. As set forth in these charts, the Exemplary Defendant Products practice the technology claimed by the ’863 Patent. Accordingly, the Exemplary Defendant Products incorporated in these charts satisfy all elements of the Exemplary ’863 Patent Claims.

29. Plaintiff therefore incorporates by reference in its allegations herein the claim charts of Exhibit 2.

30. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

## JURY DEMAND

31. Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A judgment that the ’863 Patent is valid and enforceable

B. A judgment that Defendant has infringed directly one or more claims of the ’863 Patent;

C. An accounting of all damages not presented at trial;

D. A judgment that awards Plaintiff all appropriate damages under 35 U.S.C. § 284 for Defendant's past infringement at least with respect to the ’863 Patent.

E. And, if necessary, to adequately compensate Plaintiff for Defendant's infringement, an accounting:

i. that this case be declared exceptional within the meaning of 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys fees against Defendant that it incurs in prosecuting this action;

ii. that Plaintiff be awarded costs, and expenses that it incurs in prosecuting this action; and

iii. that Plaintiff be awarded such further relief at law or in equity as the Court deems just and proper.

Dated: September 19, 2025

Respectfully submitted,

/s/ Isaac Rabicoff
Isaac Rabicoff
Rabicoff Law LLC
4311 N Ravenswood Ave Suite 315
Chicago, IL 60613
7736694590
isaac@rabilaw.com

**Counsel for Plaintiff**
**Authentixx LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system for the Western District of Texas and that ECF system will send a Notice of Electronic Filing to the CM/ECF participants in this case on the 19th day of September, 2025.

*/s/ Isaac Rabicoff*
Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
4311 N Ravenswood Ave Suite 315
Chicago, IL 60613
773.669.4590
isaac@rabilaw.com

**Counsel for Plaintiff**
**Authentixx LLC**